JOHNSON *v.* WILKINSON

No. 43756 January 24, 1966 182 So. 2d 224

*Prewitt, Bullard & Braddock,* Vicksburg, for appellant.

*Dent, Ward, Martin & Terry,* Vicksburg, for appellee.

JONES, J.

This was a suit for personal injuries received by appellant in a collision with a car driven by the appellee. The trial jury awarded appellant $5,000.00 damages, and he appeals. The only error assigned in the case is the inadequacy of the verdict.

It is agreed that appellant was guilty of no negligence. The two cars collided head on and the injuries and damages resulted therefrom. We agree with appellant that the amount of the verdict is inadequate and reverse the case and remand it for a new trial on the question of damages only.

■■ ■ The appellant has filed here a petition for a writ of error coram nobis. It asks for a writ, alleging that on November 4, 1964, appellant underwent the operation testified as necessary and appellant desires to introduce evidence thereof in a new trial claiming it as a new fact unknown at the time of trial. Regardless of the availability or non-availability of the writ, the evidence on the original trial as herein shown refutes the allegations of such petition and same is denied.

The accident happened on August 14, 1963. Appellant was driving a 1963 Rambler automobile. As a result of the collision, the steering wheel was broken and the car wrecked. Appellant, thirty-three years of age, was thrown and tossed around in the automobile. He testified that he had pains all over, particularly in his left ankle, back, chest and other areas of the body.

The first doctor he saw was a general practitioner, Dr. Curtis D. Roberts of Brandon, Mississippi. Dr. Roberts had made annual examinations of the appellant in connection with the National Guard for whom appellant worked, and said that prior to this time he presumed the appellant was in general good health: "Because he had no gross complaints or overt physical signs on his routine physical". This doctor saw the plaintiff on August 16, two days after the accident, and said that the patient had multiple complaints, suffering all over, aching, complaining of pain in his back, knees, left foot, rib cage and neck. "He was just generally aching all over, just hurting".

Dr. Roberts felt that on the basis of the marked spasm the appellant had in his neck and back and all over,

he had a lot of ligamentous strain. The doctor said he complained very bitterly of marked distress and discomfort in his neck, shoulder, back, hip and knees. This doctor felt that he had a separation of cartilage from the ribs, which is not reflected ordinarily in x-rays. He reached this conclusion because the appellant had marked pain on breathing, movement of his left shoulder, left arm, localized right to his anterior chest along the margins of the cartilage and rib junctions. He said that was his number one diagnosis, and the second was acute lumbar sacral and sacroiliac strain. He had a very painful right hip, a sprained left ankle, multiple bruises and contusions. On August 22, a few days after his discharge from the hospital, he came again complaining very bitterly of sacroiliac distress, and when he would rotate the doctor says you could hear a popping sound. He did not know what the popping sound was, but felt it was just popping the ligament. Dr. Roberts saw him again on the 24th of August, at which time he was having more difficulty in his back and pain on flexing or raising his right leg. He gave him some tranquilizers, which were not effective, and the appellant returned on the 28th of August, and was readmitted to the hospital: "Complaining bitterly, bitterly, bitterly of pain". Because of the marked pain and distress Dr. Roberts elected to have an orthopedic evaluation. The appellant saw Dr. Nix, an orthopedic surgeon, and also continued to see Dr. Roberts intermittantly. Dr. Roberts said he actually got worse; That secondary to his low back distress, he would become bloated and distended, apparently because he felt that he could not have a satisfactory evacuation because of pain accompaning same. This continued for sometime. Dr. Roberts continued to see the man off and on for about ten months prior to the giving of his deposition. It was his opinion from his examination and knowledge of the facts that the man would eventually recover with no permanent affects. However, there is

nothing in the record except a statement by Dr. Roberts that soon after he was examined by Dr. Nix he had a report from Dr. Nix, which is not shown. Apparently Dr. Roberts had no knowledge of a final diagnosis of Dr. Nix. There seems to have been very little communication, other than the preliminary report, between the expert and the general practitioner.

Dr. Nix was called and testified that he first saw the appellant on August 29, 1963; that on his initial examination the x-rays were not adequate, and on the basis of what he had at that time he reached an impression that most likely the appellant had a strain of the low back and the joints of the low part of his back. The x-rays were not sufficient, however, for him to state that this was the only problem at that time. They made more x-rays, which were also inadequate. Finally, on November 1, 1963, x-rays then taken demonstrated a norrowing of the L-5 interspace, being vertebrae of the back. Dr. Nix's diagnosis then was lumbo sacral instability, secondary to degenerative disc disease at L-5 and changes in the lumbo sacral facet joints. When asked the cause of this condition, the doctor answered: "Based on the history I obtained, the findings, and the x-rays, I believe this present condition was caused by the accident." He had noticed the spasms of the muscles in the area injured and stated that it would probably get worse. The doctor recommended a fusion of the vertebrae, an operation that required approximately two to three hours. He stated that for three weeks after the operation the patient would have to remain on absolute bed rest, after which he would be allowed to walk in a brace. But his activities would be moderately limited for six months and he would be able to return to unlimited activity in approximately one year. When asked about pain subsequent to recovery from the operation, the doctor said he would have pain intermittantly although it would not be as severe, and that this

would probably continue with occasional episodes of pains for the rest of his life. He also said he would have some limitation of motion in his back that would remain with him throughout his life. The doctor's expense for the operation would be $400.00 or $500.00. The doctor stated appellant would be in the hospital approximately four weeks, and it would be a year before he could return to unlimited activities. He said if the man did not have the operation he would continue to have backaches, but he believed he would eventually desire to have surgery to relieve the pain. He further said that on November 1 he had ordered a brace for Mr. Johnson to wear. On cross examination, when asked whether he could tell if this narrowing was a result of the accident or whether his condition developed just normally, the doctor said: "I cannot say definitely that it is either one". On redirect examination, when again asked the question as to the cause of the back condition, the doctor said: "I cannot say with certainty, though in my opinion the problem in his back now is due to the injury he described occurring on August 14, 1963".

The appellee argues that since Dr. Nix could not say for sure that the injury was caused by the accident, the verdict of $5,000.00 was justified. Dr. Nix testified that the condition of the vertebrae could result without strain or trauma, and he said that he could not positively aver that the accident caused such injury. However from the history, examination, and whatever other facts he knew about the man's injury and accident, he was of the opinion that the condition was caused by the accident. The appellant was thirty-three years of age, at that time, and he did not have any back trouble prior to the accident.

His symptoms and pains began right after the accident and continued until the time of the trial. Dr. Roberts, while not testifying to the narrowing of the disc, was of the opinion that whatever injury he had

came from the accident. We think the evidence is overwhelmingly that the appellant's condition was the result of the accident.

Appellant proved the following actual damages:

| | |
|---|---:|
| Damage to automobile | $1,400.00 |
| Hospital and doctor bills to time of trial | 959.98 |
| Lost wages | 1,105.54 |
| Towing charge | 70.30 |
| Rental of another automobile | 75.13 |
| A TOTAL OF | $3,610.95 |

When you add to this the doctor's bill of four or five hundred dollars for the operation, the hospital expenses for a stay of four weeks, the disability, either total or partial, for a year after the operation, it is obvious that the judgment of $5,000.00 would not cover the actual losses and expenses sustained, and to be sustained by the appellant as a result of the accident.

In Whatley v. Delta Brokerage & Warehouse Co., 248 Miss. 416, 159 So. 2d 634 (1964), this Court held that a judgment of $15,000.00 for one who had "out of pocket" expenses for medical treatment and loss of wages in excess of $8,000.00 at the time of the trial, and who sustained permanent injury to his knee, arm, shoulder and chest was grossly inadequate. And in so holding the Court said:

"We are of the opinion that the damages awarded appellant in this case are so grossly inadequate as to the evince prejudice and bias on the part of the jury. A mere statement of his injuries, medical expense and loss of earnings is sufficient basis for our conclusion". 248 Miss. at 430, 159 So. 2d at 639.

In Ladner v. Merchants Bank and Trust Co., 251 Miss. 804, 171 So. 2d 503 (1965), this Court held $18,000.00 so grossly inadequate as to evidence prejudice and bias so

that the plaintiff was entitled to a new trial. The plaintiff was thirty-six years of age, had $2,531.04 medical expenses; his earnings when injured were $110.00 per week; he lost $12,000.00 of income from employment; was forty percent (40%) permanently, partially disabled; and in that case the Court made the same statement as above quoted from the Whatley case.

In Dunn v. Butler, 252 Miss. 40, 172 So. 2d 430 (1965), where the jury had returned a verdict for $1,385.00, $885.00 of which was for medical bills already incurred, and $500.00 for various other bills, and did not include any compensation for pain and suffering, this Court said:

"In order to insure the preservation, integrity and vitality of the right to trial by jury, this Court has throughout its history exercised its constitutionally ordained duty to set aside verdicts whenever the jury manifestly failed to respond to reason. This power must be exercised with conscious self restraint and caution, but it must be exercised in a proper case for trial by a jury that will not respond to reason is a denial of the right itself.

In the present case, it is manifest that the jury did not respond to reason, which is the same as saying that the verdict evinces bias and prejudice against appellant. The jury expressly denied any recovery for pain and suffering past and future, and at least some permanent disability. Appellant is a working man whose means of earning a living is his labor. We hold that the verdict is so inadequate that it evinces bias and prejudice and should be and is reversed." 172 So. 2d at 431.

■ ■ In order to keep the scales of justice properly operating, it is as much our duty to set aside a grossly inadequate verdict as it is to reverse a grossly excessive verdict. ■ ■ Therefore, the petition for error coram nobis is denied, the cause is affirmed as to liability,

and reversed and remanded for a new trial on the issue of damages only.

Petition for error coram nobis denied; case affirmed as to liability and reversed and remanded for a new trial as to damages only.

*Gillespie, P. J., and Rodgers, Brady and Inzer, JJ.,* concur.